UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHERRI L. SWANSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1950** |
| **PEOPLEREADY, INC.** | **SECTION: "G"(5)** |

### ORDER AND REASONS

This litigation arises out of Defendant's long-term tenancy at 51 Westbank Expressway in Gretna, Louisiana.[1] Before the Court is Defendant PeopleReady, Inc.'s ("Defendant") Rule 12(b)(6) Motion to Dismiss.[2] Defendant argues that the subsequent purchaser doctrine bars Plaintiffs Sherri L. Swanson and LLR Holdings, LLC's (collectively "Plaintiffs") claims.[3] Defendant also argues that Plaintiffs' tort claims are prescribed.[4] Plaintiffs oppose the motion in part, arguing that the subsequent purchaser doctrine does not bar the claims because Swanson owned the property at the time of the lease termination and all rights of the intervening purchaser were assigned to Plaintiffs.[5] Plaintiffs do not respond to the argument that the tort claims are prescribed.[6] Therefore, the Court dismisses Plaintiffs' tort claims. However, Defendants subsequent purchaser argument cannot be resolved at this time. There is insufficient evidence in

---

[1] Rec. Doc. 1-1 at 1–2.

[2] Rec. Doc. 25.

[3] *Id.* at 1.

[4] *Id.*

[5] Rec. Doc. 28.

[6] *Id.*

1

the record to determine who owned the property at the time of the lease termination, and thus the Court cannot resolve that issue at this stage. Accordingly, considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part.

## I. Background

This litigation arises out of Defendant's long-term tenancy at 51 Westbank Expressway in Gretna, Louisiana (the "property").[7] According to the First Supplemental and Amending Complaint, at all relevant times the owner and lessor of the property was Plaintiff LLR Holdings, LLC ("LLR"), and Plaintiff Sherri L. Swanson ("Swanson") was the sole member of LLR.[8] Plaintiffs allege that Defendant violated the terms of the lease by failing to give Plaintiffs the required 60-day notice of termination.[9] Specifically, Plaintiffs allege that they received a letter from Defendant on March 10, 2022, informing them that Defendant did not wish to continue the lease, but under the terms of the lease Plaintiffs should have been notified of the lease termination on or before February 1, 2022.[10] Plaintiffs also allege that Defendant failed to maintain the property, failed to return the property in its original state, and denied the owner access to the property during the 60 days prior to lease termination.[11] Plaintiffs allege that Swanson noticed damage to the property when she gained access it on April 11, 2022.[12] Plaintiffs allege that they

---

[7] Rec. Doc. 1-1 at 1–2.

[8] Rec. Doc. 17. The original petition alleged that the property was owned by Swanson.

[9] Rec. Doc. 1-1 at 3.

[10] *Id.* at 4.

[11] *Id.* at 3.

[12] *Id.* at 5.

have sustained damages totaling $104,400 in addition to attorneys' fees.[13] Plaintiffs bring claims for breach of the lease agreement and tort liability under Louisiana law.[14]

On May 4, 2023, Swanson filed a Petition for Damages against Defendant in the 24th Judicial District Court for the Parish of Jefferson.[15] On June 8, 2023, Defendant removed the case to this Court asserting diversity jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, Swanson is a citizen of Louisiana, and Defendant is incorporated and has its principal place of business in Washington.[16] On March 8, 2024, Swanson obtained leave of Court to file a First Supplemental and Amending Complaint adding LLR as a Plaintiff.[17] LLR is also a citizen of Louisiana as it is an LLC whose sole member is Swanson.[18]

On April 4, 2024, Defendant filed the instant Rule 12(b)(6) Motion to Dismiss.[19] On May 6, 2024, Plaintiffs filed an opposition to the motion.[20] On May 13, 2024, Defendant filed a reply brief in further support of the motion.[21]

---

[13] *Id.* at 9.

[14] *Id.* at 8.

[15] Rec. Doc. 1-1.

[16] Rec. Doc. 1.

[17] Rec. Doc. 17.

[18] *Id.*

[19] Rec. Doc. 25.

[20] Rec. Doc. 28.

[21] Rec. Doc. 30.

## II. Parties' Arguments

### A.     *Defendant's Arguments in Support of the Motion*

Defendant argues that the subsequent purchaser doctrine bars Plaintiffs' claims.[22] Defendant relies on property records to show that LRR bought the property in April 2023, a year after the lease terminated.[23] Under the subsequent purchaser doctrine, Defendant asserts that a purchaser of property lacks a right of action to sue for pre-acquisition damages absent an express and specific assignment of the personal right to sue by the owner of the property at the time the damages occurred.[24] Defendant cites the Cash Sale agreement, which states that the seller sold LRR the property "with all legal warranties and with full substitution and subrogation in and to all rights and actions of warranty which she [sic] has or may have against all preceding owners and vendors. . . ."[25] Defendant contends that courts have found that similar general language did not assign the seller's personal right to sue a lessee for damages already done to a property.[26] Therefore, Defendant asserts that Plaintiffs are not the proper parties to bring these claims.[27]

Defendant also argues that Plaintiffs' tort claims are prescribed.[28] Defendant points out that the Complaint makes clear that Swanson had knowledge of the alleged damage to the property

---

[22] Rec. Doc. 25-2 at 5.

[23] *Id.* at 3, 6.

[24] *Id.* at 5.

[25] *Id.* at 6.

[26] *Id.* (citing *Boone v. Conoco Phillips Co.*, 139 So. 3d 1047, 1053 (La. App. 3 Cir. 2014); *Tureau v. 2 H Inc.*, 2016 U.S. Dist. LEXIS 112696, at *7 (W.D. La. Aug. 23, 2016); *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 281 (La. 2011); *Broussard v. Dow Chemical Co.*, 550 Fed. App'x. 241, 243 (5th Cir. 2013)).

[27] *Id.* at 7.

[28] *Id.*

on April 11, 2022.[29] Therefore, Defendant argues that any tort claims are prescribed because the petition was filed in state court more than one year later on April 26, 2023.[30]

**B.      *Plaintiff's Arguments in Opposition to the Motion***

Plaintiffs oppose the motion in part, arguing that the subsequent purchaser doctrine does not bar the claims because Swanson owned the property at the time of the lease termination and all rights of the intervening purchaser were assigned to Plaintiffs.[31] According to Plaintiffs, Judy Galarza ("Galarza") originally owned the property.[32] After Galarza passed away on April 29, 2021, Plaintiffs assert that Swanson inherited the property.[33] On March 31, 2023, Swanson sold the property to Kyle Legendre ("Legendre"), who in turn resold the property to LRR on April 17, 2023.[34] Plaintiffs contend that Legendre recently assigned any and all rights he has to Swanson and LLR.[35] Therefore, Plaintiffs assert that they "have the inherent right and/or assigned right to enforce the terms and conditions of the lease."[36]

Plaintiffs do not respond to the argument that the tort claims are prescribed.[37]

**C.      *Defendant's Arguments in Further Support of the Motion***

In reply, Defendant argues that Plaintiffs fail to establish that either: (1) they owned the

---

[29] *Id.* at 8.

[30] *Id.*

[31] Rec. Doc. 28.

[32] *Id.* at 1.

[33] *Id.*

[34] *Id.* at 2.

[35] *Id.*

[36] *Id.* at 3.

[37] *Id.*

property at the time Defendant terminated the lease; or (2) they obtained a valid assignment of rights to the Lease from the then-owner(s).[38] Defendant asserts that the documents attached to Plaintiffs' opposition only show that Swanson administered Galarza's succession, and there was a transfer of the property after Defendant's termination of the Lease from Swanson to Legendre and then back to Swanson and LRR.[39] Defendant contends that Plaintiffs have failed to show how and when they obtained the rights to the lease.[40] Absent such a showing, Defendant argues that the Court must dismiss the claims regarding breach of the lease.[41] Finally, since Plaintiffs did not respond to the argument that the tort claims are prescribed, Defendant asserts that the Court should summarily dismiss the tort claims.[42]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[43] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[44] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[45] "Factual allegations must be enough to raise a right to relief above the

---

[38] Rec. Doc. 30 at 1.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Fed. R. Civ. P. 12(b)(6).

[44] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

speculative level."[46] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[47]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[48] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[49] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[50] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[51] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[52] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[53] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[54] If factual allegations are insufficient to raise a right to relief above the

---

[46] *Twombly*, 550 U.S. at 555.

[47] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[48] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[49] *Iqbal*, 556 U.S. at 678–79.

[50] *Id.* at 679.

[51] *Id.* at 678.

[52] *Id.*

[53] *Id.*

[54] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[55]

## IV. Analysis

Defendant argues that Plaintiffs' tort claims are prescribed.[56] Plaintiffs did not respond to this argument.[57] Louisiana Civil Code article 3493 provides, "When damage is caused to immovable property, the one-year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." Plaintiffs allege that Swanson noticed damage to the property when she gained access it on April 11, 2022.[58] Swanson filed the original Petition against Defendant in state court on April 26, 2023,[59] one year and 15 days later. Therefore, the Court dismisses Plaintiffs' tort claims because it is clear from the face of the Complaint that the claims have prescribed.

Defendant also argues that the subsequent purchaser doctrine bars Plaintiffs' claims.[60] Plaintiffs opposes this portion of the motion and argues that the subsequent purchaser doctrine does not bar the claims because Swanson owned the property at the time of the lease termination and all rights of the intervening purchaser were assigned to Plaintiffs.[61]

"Louisiana law provides that when property is damaged through the actions of another, the

---

[55] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[56] Rec. Doc. 25 at 1.

[57] Rec. Doc. 28.

[58] Rec. Doc. 1-1 at 5.

[59] *Id.* at 3.

[60] Rec. Doc. 25 at 1.

[61] Rec. Doc. 28.

owner of the property (obligee) obtains a personal right to demand that the tortfeasor (obligor) repair the damage to the property."[62] While real rights pass on to a subsequent acquirer without an express stipulation, personal rights "cannot be asserted by another in the absence of an assignment or subrogation."[63] "The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted."[64] Thus, this personal right to sue for property damage stays with the owner even after the property is transferred unless there is an express assignment of that right to the subsequent owner.[65] The Louisiana Supreme Court in *Eagle Pipe* summarized:

> [I]njury to property must be understood as damage to the real rights in the property. A tortfeasor who causes injury or damage to a real right in property owes an obligation to the owner of the real right. This relationship arises as a matter of law and provides to the owner of the real right a personal right to sue the tortfeasor for damages. In the absence of an assignment or subrogation of this personal right, a subsequent purchaser of the property cannot recover from a third party for property damage inflicted prior to the sale.[66]

In *Eagle Pipe*, landowners sued for property damage arising from pre-purchase contamination of the property allegedly caused by oil and gas companies that had various surface leases with the former landowners.[67] The plaintiff alleged a property damage claim and asserted

---

[62] *Eagle Pipe & Supply Inc., v. Amerada Hess Corp.*, 2011-760, p. 264 (La. 10/25/11); 79 So. 3d 246 (citing to La. Civ. Code art. 2315).

[63] *Id.* at 262 (internal citations omitted).

[64] *Id.* at 256–57.

[65] *Id.* at 265.

[66] *Id.* at 279.

[67] *Id.* at 252.

9

strict liability and negligence causes of action.[68] The court reviewed the language of the sales contract in which "[the sellers] do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with full subrogation to all their rights and action of warranty against previous owners …" and concluded that there was "no express assignment or subrogation of the former property owners' personal right to sue for damage in the act of sale at issue here."[69]

Both parties offer public records for the Court to consider in determining who owned the property on April 30, 2022, when the lease was terminated. Courts may refer to matters of public record when deciding a motion to dismiss.[70] Records of the Jefferson Parish Assessor's Office show that Judy Galarza owned the property from November 17, 2017 through April 23, 2023.[71] However, records from the 22nd Judicial District Court for the Parish of St. Tammany suggested that Galarza passed away on April 29, 2021.[72] Records from the 22nd Judicial District Court for the Parish of St. Tammany also show that Swanson was Galarza's daughter and the administratrix of Galarza's estate.[73] Records then show that Swanson sold the property to Kyle Legendre on March 31, 2023,[74] and Legendre then sold the property to LRR on April 17, 2023.[75] In the reply brief, Defendants correctly point out that the records do not conclusively show who owned the

---

[68] *Id.* at 279.

[69] *Id.* at 281.

[70] *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000).

[71] Rec. Doc. 25-5.

[72] Rec. Doc. 28-1.

[73] *Id.*

[74] Rec. Doc. 28-2.

[75] Rec. Doc. 28-3.

10

property on April 30, 2022. However, Swanson must have acquired ownership of the property at some time after April 29, 2021, when her mother died, and March 31, 2023, when Swanson sold the property to Legendre.

Defendants suggest that Plaintiffs have failed to meet their burden of proof to show who owned the property on April 30, 2022. This argument is unavailing. Even though the Court can consider certain records at the Rule 12(b)(6), Plaintiffs are not obligated to come forward with evidence to support their claims at this stage of the litigation. There is insufficient information in the record to determine who owned the property at the time of the lease termination. Therefore, the Court cannot resolve the issue at this stage.

## V. Conclusion

For the reasons discussed above, the Court dismisses Plaintiffs' tort claims. However, Defendants subsequent purchaser argument cannot be resolved at this time. There is insufficient evidence in the record to determine who owned the property at the time of the lease termination. Therefore, the Court cannot resolve that issue at this stage. Accordingly,

**IT IS HEREBY ORDERED** that Defendant PeopleReady, Inc. ("Defendant")'s Rule 12(b)(6) Motion to Dismiss[76] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that it seeks dismissal of Plaintiffs' tort claims. It is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this  12th  day of June, 2024.

_____
NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[76] Rec. Doc. 25.